UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELITA JOHNSON,<br>        Plaintiff,<br><br>    v.<br><br>AURORA BANK, F.S.B., et al.,<br>        Defendants. | Case No. 14-cv-05424-JSC<br><br>**ORDER RE: DEFENDANTS' MOTION TO DISMISS**<br>Re: Dkt. No. 16 |

Plaintiff Angelita Johnson ("Plaintiff") brings this action seeking damages stemming from the foreclosure of her home. She sues Defendants Aurora Bank, F.S.B. ("Aurora Bank") and Nationstar Mortgage, LLC ("Nationstar") for violation of California's Homeowner's Bill of Rights, breach of contract, and misrepresentation. Plaintiff contends that after she defaulted on her loan, Aurora induced Plaintiff to enter two forbearance agreements under the pretense that if she made payments the bank would consider her for a permanent loan modification; Plaintiff now contends that Aurora never intended to consider her for a modification at all, but rather solely sought to obtain as much money as possible before foreclosing on the home. Plaintiff also contends that Nationstar improperly foreclosed on her property while she was in active loan modification review despite a Nationstar representative having told Plaintiff that her application was still under review and no sale would take place. Now pending before the Court is Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted. (Dkt. No. 14.) The Court finds this matter suitable for disposition without oral argument. *See* N.D. Cal. Civ. L.R. 7-1(b). Accordingly, the hearing set for March 26, 2015 is VACATED. Having considered the parties' arguments and the relevant legal authority, and for the reasons set forth in this Order, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss.

**FACTUAL & PROCEDURAL BACKGROUND**

The following facts are taken from the allegations of the First Amended Complaint ("FAC"), the documents attached thereto, and judicially noticeable documents.[1] Plaintiff was the owner of real property located at 1785-1787 Franklin Street, Berkeley, California (the "Property"). In April 2008, Aurora became the servicer under the Deed of Trust on the Property, which is a first lien deed of trust. (Dkt. No. 14 ¶ 10.) In 2011, Aurora became the beneficiary under the Deed of Trust, as well. (*Id.*) At all times relevant to this action, Plaintiff lived in the Property as her primary residence. (*Id.* ¶¶ 2, 10.)

In March 2009, Plaintiff began to experience financial difficulty following the death of her son and both of her parents and defaulted on the loan. (*See id.* ¶ 11 & Ex. A.) Aurora filed a Notice of Default against the Property in June 2009. (*Id.*) In October of 2009, Aurora recorded a Notice of Trustee's Sale against the Property. (*Id.*) When Plaintiff received the Notice of Trustee's Sale, she contacted Aurora to find out what she could do to avoid foreclosure. (*Id.* ¶ 12.) In December 2009, Aurora sent Plaintiff a "Special Forbearance Agreement"—titled "Workout Agreement"—(the "December 2009 Forbearance Agreement"), which notes that Plaintiff owed over $25,000 in arrears, but provides that Aurora would postpone any foreclosure sale in exchange for Plaintiff making monthly payments of $1,169.00. (*Id.* at ¶ 12 & Ex. A, 19 & § a.2.) In addition, the December 2009 Forbearance Agreement provides that Aurora "shall be under no obligation to dismiss a pending foreclosure proceeding until such time as all terms and conditions

---

[1] Pursuant to Federal Rule of Evidence 201, the Court "may judicially notice a fact that is not subject to reasonable dispute because it: (i) is generally known within the trial court's territorial jurisdiction; or (ii) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Judicial notice is appropriate for "materials incorporated into the complaint or matters of public record." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Courts in this District regularly take judicial notice of publicly recorded documents related to real property, including deeds of trust, assignments and substitutions thereto, trustee's deeds upon sale, rescissions of notices of default, and elections to sell under a deed of trust. *See, e.g.*, *Valasquez v. Mortg. Elec. Registration Sys., Inc.*, No. C 08-3818 PJH, 2008 WL 4938162, at *2-3 (N.D. Cal. Nov. 17, 2008); *Hotel Emps. & Rest. Emps. Local 2 v. Vista Inn Mgmt. Co.*, 393 F. Supp. 2d 972, 977-78 (N.D. Cal. 2005); *W. Fed. Sav. & Loan Ass'n v. Heflin*, 797 F. Supp. 790, 792 (N.D. Cal. 1992). Here, Defendants request that the Court take judicial notice of Exhibits 1-13, all of which are such publicly recorded documents relating to the Property at issue in this case. (*See* Dkt. No. 17 ¶¶ 1-13.) Therefore, the Court GRANTS Defendants' request for judicial notice of these documents. (Dkt. No. 17.)

of this Agreement and Attachment A have been fully performed." (*Id.* at Ex. A § 4.) Section b of Attachment A, in turn, provides in relevant part that

> Because payment of the Plan payments will not cure the Arrearage, Customer's account will remain delinquent. Upon the Expiration Date [of this agreement], Customer must cure the Arrearage through a full reinstatement, payment in full, loan modification agreement, or other loan workout option that Lender may offer (individually and collectively, a "Cure Method.")[.] Customer's failure to enter into a Cure Method will result in the loan being disqualified from any future Lender Loss Mitigation program with respect to the loan evidenced by the Note, and regular collection activity will continue, including, but not limited to, commencement or resumption of the foreclosure process[.]

(*Id.* at Ex. A § b.) The agreement also provides

> <u>No Waiver</u>. Nothing contained herein shall constitute a waiver of any [or] all of the Lender's rights or remedies, including the right to commence or resume foreclosure proceedings. Failure by Lender to exercise any right or remedy under this Agreement or as otherwise provided by applicable law shall not be deemed a waiver thereof.

(*Id.* at Ex. A § 7 (emphasis in original).) In addition, the agreement includes a provision titled "Entire Agreement," which notes that it "may not be amended, waived, discharged or terminated orally but only by an instrument in writing." (*Id.* at Ex. A § 14.) Finally, Plaintiff's Deed of Trust explicitly provides that forbearance does not constitute a waiver of the lender's right to foreclose. (Dkt. No. 17-1 at 9.) Plaintiff signed the December 2009 Forbearance Agreement and made the monthly payments as required through June 2010. (*Id.* ¶ 13.)

Meanwhile, in April 2010, Aurora sent Plaintiff a letter offering Plaintiff a "more permanent home retention option" at the completion of the December 2009 Forbearance Agreement, provided that Plaintiff continued to make her $1,169.00 monthly payments after the completion of that agreement. (*Id.* ¶ 14.) Plaintiff continued to make those monthly payments after the agreement expired and also submitted documents that Aurora regarding a permanent modification solution. (*Id.*)

Around January 12, 2011, however, Aurora rejected Plaintiff's monthly payment. (*Id.* ¶ 15.) Plaintiff asserts that she had been planning to either reinstate the loan or apply for a modification, but before she could do so, on January 21, 2011 Aurora recorded a new Notice of Trustee's Sale against the Property. (*Id.* ¶ 16.) On January 27, 2011, Aurora sent Plaintiff a

3

1  "Foreclosure Alternative Agreement" (the "January 2011 Forbearance Agreement"), which is
2  similar to the December 2011 Forbearance Agreement, and noted that Plaintiff now owed more
3  than $44,000 in arrears.  (*Id.* ¶ 17 & Ex. B)  The January 2011 Forbearance Agreement required
4  Plaintiff to make a first payment of $2,269.56 followed by five monthly payments of $1,654.00.
5  (*Id.* ¶ 17 & Ex. B § a.1.)  The January 2011 agreement contained the same language as the
6  December 2009 agreement: the "no waiver" provision, the "Entire Agreement" clause providing
7  that the agreement could only be amended in writing, and the statement regarding the plaintiff's
8  obligation to cure the arrearage upon the expiration of the plan period.  (*Id.* at Ex. B. §§ 7, b.)  In
9  addition, the January 2011 agreement provided that it was Plaintiff's responsibility to provide
10  Aurora with "accurate and complete financial information and documentation in support of [her]
11  request for a loan modification or other foreclosure options[,]" and specifically listed the required
12  items.  (*Id.* at Ex. B. § a.2.)  Plaintiff signed this agreement and made the monthly payments from
13  February through July 2011.  (*Id.* ¶ 18.)

14  In July 2011, after Plaintiff submitted her last payment under the January 2011
15  Forbearance Agreement, Aurora instructed Plaintiff to continue to submit monthly payments
16  pursuant to that agreement while Aurora "continued to determine if Plaintiff was eligible for a
17  permanent loan modification." (*Id.*)  Accordingly, Plaintiff made monthly payments of $1,645.00
18  for several months until October 2011, when Aurora rejected her payment.  (*Id.*)

19  Back in January 2011, and continuing until July 2012, Aurora had been requesting that
20  Plaintiff submit new documents in support of her loan modification application.  (*Id.* ¶ 19.)
21  Plaintiff complied with these requests but never received a determination of her loan modification
22  application.  (*Id.*)

23  In June 2012, Plaintiff received notice that servicing on the loan was being transferred to
24  Nationstar on July 1, 2012.  (*Id.* ¶ 20.)  Aurora remained the beneficiary until October 3, 2012,
25  when it transferred its interest to Nationstar.  (*Id.* ¶ 21.)  On July 2, 2012, Nationstar, at Aurora's
26  instruction, recorded a new Notice of Trustee's Sale against the Property.  (*Id* ¶ 20.)  Sometime
27  thereafter, Nationstar asked Plaintiff to submit additional documents in support of her loan
28  modification application, and Plaintiff did so.  (*Id.* ¶ 21.)  On January 26, 2013, Nationstar notified

4

1  Plaintiff that her loan modification application was denied because Plaintiff had failed to submit
2  documents.  (*Id.* ¶ 22.)  Plaintiff immediately contacted Nationstar to inform the servicer that she
3  had, in fact, submitted all requested documents.  (*Id.*)  Nationstar then agreed to continue
4  evaluating Plaintiff for a loan modification.  (*Id.*)  During this time, a trustee's sale was scheduled
5  for February 20, 2013.  (*Id.* ¶ 23.)  Plaintiff received notice that because she was being considered
6  for a loan modification, the sale would be postponed to March 6, 2013.  (*Id.*)  On February 23,
7  2013, Plaintiff received a letter from Nationstar stating that Nationstar had received all of
8  Plaintiff's documents and her loan modification application was complete.  (*Id.*)

9  On March 5, 2013, Plaintiff spoke on the telephone with her single point of contact at
10 Nationstar, Edward Babino, who confirmed that there was no scheduled sale date for the Property,
11 and that the March 6 sale date had been vacated because Plaintiff had submitted a completed loan
12 modification application.  (*Id.* ¶ 24.)  Mr. Babino confirmed the same on March 13, 2013.  (*Id.*)
13 Notwithstanding Mr. Babibo's assurances that there would be no sale, on March 19, 2013,
14 Plaintiff received a letter stating that her home had been sold at a trustee's sale on March 13, 2013,
15 and Nationstar now owned the home.  (*Id.* ¶ 25.)  In shock, Plaintiff contacted Mr. Babino, who
16 informed her in writing that his representation on March 13 that there was no sale date was an
17 "oversight" and that, to the contrary, there had been a sale scheduled that very day and the
18 Property was in fact sold that day.  (*Id.*)  On March 21, 2013, Nationstar recorded a Trustee's
19 Deed upon Sale.  (*Id.*)

20 Plaintiff contends that if she had known her home was going to a trustee's sale on March
21 13, 2013, she would have pursued other foreclosure prevention alternatives, such as a deed-in-lieu,
22 short sale, or reinstatement.  (*Id.* ¶ 26.)

23 Plaintiff filed suit in December 2014.  (*See* Dkt. No. 1.)  After Defendants moved to
24 dismiss her initial complaint, Plaintiff filed the FAC alleging that Nationstar violated the
25 California Homeowner's Bill of Rights by recording a notice of trustee's sale and proceeding with
26 a foreclosure sale while her complete first lien loan modification application was pending, *see* Cal.
27 Civ. Code § 2923.6, and committed fraud by telling her there was no scheduled sale date when
28 there actually was.  (Dkt. No. 14.)  In addition, Plaintiff alleges breach of contract against Aurora,

5

1    on the ground that in the forbearance agreements Aurora gave Plaintiff the right to cure arrearage

2    through reinstatement, modification, or other foreclosure alternatives and breached that agreement

3    by commencing foreclosure proceedings and filing a Notice of Trustee's Sale in July of 2012.

4    (*Id.*)  Defendants thereafter filed the instant motion to dismiss contending that Plaintiff's

5    allegations fail to state a claim upon which relief could be granted.  (Dkt. No. 16.)

## LEGAL STANDARD

7           A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the

8    sufficiency of the complaint where the action fails to allege "enough facts to state a claim to relief

9    that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has

10   facial plausibility when the plaintiff pleads factual content that allows the court to draw the

11   reasonable inference that the defendant is liable for the misconduct alleged. The plausibility

12   standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that

13   a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations

14   omitted).  Under Federal Rule of Civil Procedure 8(a)(2) a party is only required to make "a short

15   and plain statement of the claim showing that the pleader is entitled to relief, in order to give the

16   defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550

17   U.S. at 554 (internal citations and quotations omitted).

18          For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in

19   the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving

20   party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

21   However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a

22   plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels

23   and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

24   *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted).  "Determining whether a

25   complaint states a plausible claim for relief . . . [is] a context-specific task that requires the

26   reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556

27   U.S. 662, 663-64 (2009).

28          Generally, when a complaint is dismissed, "leave to amend shall be freely given when

1  justice so requires." *Carvalho v. Equifax Info. Servs.*, LLC, 629 F.3d 876, 892 (9th Cir. 2010); *see*
2  Fed. R. Civ. P. 15(a).  The Ninth Circuit has "repeatedly held that a district court should grant
3  leave to amend even if no request to amend the pleading was made, unless it determines that the
4  pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d
5  1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

Plaintiff asserts three causes of against Nationstar—violation of the California Homeowner Bill of Rights § 2923.6, and intentional and negligent misrepresentation—and one against Aurora, for breach of contract.  The Court will address each cause of action in the order alleged.

**A.  Plaintiff has Stated a Claim for Violation of the HBOR § 2923.6**

The California Homeowner Bill of Rights ("HBOR") is a "state law designed to both provide protections for homeowners facing [non-judicial] foreclosure and reform aspects of the foreclosure process." *Shapiro v. Sage Point Lender Servs.*, No. 14-1591-JGB (KKx), 2014 WL 5419721, at *4 (C.D. Cal. Oct. 24, 2014) (citing Cal. Civ. Code § 2923.4(a)).  The HBOR took effect on January 1, 2013.  Among its protections to home borrowers, the HBOR "attempts to eliminate the practice, commonly known as dual tracking, whereby financial institutions continue to pursue foreclosure even while evaluating a borrower's loan modification application." *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1149 (N.D. Cal. 2013); *see* Cal. Civ. Code § 2923.4 (noting that the purpose of the act is to ensure that borrowers are "considered for, and have a meaningful opportunity to obtain, available loss mitigation options" in order to avoid foreclosure).

Thus, while a borrower's complete application for a first lien loan modification is pending, the servicer may not record a notice of default, notice of trustee's sale, or conduct a trustee's sale. *See* Cal. Civ. Code § 2923.6(c).  The provisions of the HBOR relevant to Plaintiff's dual-tracking claim are:

> (c) If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent shall not record a notice of default, notice of sale, or conduct a trustee's sale while the complete first lien loan modification application is pending . . . until . . . the mortgage

> servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period . . . has expired.
>
> . . .
>
> (g) In order to minimize the risk of borrowers submitting multiple applications for first lien loan modification for the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013, or who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.

Cal. Civ. Code § 2923.6.

Nationstar contends that Plaintiff's claim is barred because Plaintiff had a "full and fair opportunity to be reviewed for a loan modification" from 2009 and 2012, but they rejected her application in 2013. (Dkt. No. 16 at 9.[2]) Nationstar further argues that because Plaintiff has not alleged any changed circumstances since the January 2013 denial, she is not eligible for Section 2923.6(g)'s exception for when "there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer."

According to the FAC, Plaintiff began sending Aurora documents in support of a loan modification application in January 2011. (Dkt. No. 14 ¶ 19.) She had not yet received a decision on her application when Nationstar became her servicer and recorded a Notice of Trustee's Sale. (*Id.* ¶¶ 19-20.) Thereafter, Nationstar requested that Plaintiff submit additional documents, which she did; then, in January 2013, it notified Plaintiff that her application was denied for failure to submit documents, even though it later admitted that she had, in fact, submitted all requested documents. (*Id.* ¶¶ 21-23.) There are no allegations that Nationstar reviewed the merits of Plaintiff's application or the requested documents that she did submit.

Plaintiff argues that because the denial was not on the merits, it cannot constitute a good faith evaluation of Plaintiff's loan application. While nothing in the statute's language requires the prior denial to be "on the merits" or a "good faith evaluation," the provision is limited to

---

[2] All page number references in this Order are to the ECF page number.

8

borrowers "who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification." Cal. Civ. Code § 2923.6(g). The HBOR's legislative history states that one purpose of the amendments "is to ensure that, as part of the non-judicial process, borrowers have a meaningful opportunity to obtain available loss mitigation options[.]" Sen. Floor Analysis of Assemb. Bill No. 278 ("AB 278 Analysis"), Conf. Rep. No. 1, Reg. Sess., at 27 (Cal. July 2, 2012). Thus, "[b]orrowers must be thoroughly evaluated for all available loss mitigation options before foreclosure referral, and banks must act on loss mitigation applications before referring loans to foreclosure; i.e. "dual tracking" will be restricted." *Id*. at 3. Neither party has submitted any case law interpreting what it means to be "evaluated" or "afforded a fair opportunity to be evaluated," but the Court addressed this issue in the context of Plaintiff's other mortgage foreclosure case, also pending before the Court. *See Johnson v. Bank of Am., N.A.*, No. 14-cv-05053-JSC, 2015 WL 351210, at *5 (N.D. Cal. Jan. 23, 2015).

Just as in Plaintiff's other case, in this action "[t]he Court cannot conclude as a matter of law that Plaintiff's application was evaluated or that she was afforded a fair opportunity to be evaluated." *Id.* In *Johnson*, the Court so concluded because

> Plaintiff has not alleged that her application was actually evaluated; to the contrary, Defendant denied her application for failing to submit documents, not because upon evaluation Defendant concluded that she did not qualify for a loan modification. Second, drawing all reasonable inferences in Plaintiff's favor, Plaintiff was also not afforded a fair opportunity to be evaluated. Her application was denied for failing to submit documents that she did in fact submit[.] . . . Such circumstances are not a fair opportunity to be evaluated.

*Id.* So it is here, where Plaintiff's rejection was premised on the absence of documents that she alleges she actually submitted—which the lender later acknowledged—not on a review of the merits of the completed application. (*See* Dkt. No. 14 ¶¶ 19-22.)

Nationstar laments that such a holding cannot stick because "no loan modification application denial could ever achieve statutory effect as long as a defaulting borrower claimed that the denial was the result of a purported error on the part of the lender." It complains that "[s]imply sending more documents after a denial cannot invalidate that denial." (Dkt. No. 19 at 3.) But the FAC does not allege that Plaintiff unilaterally sent in documents after the denial; it alleges that

9

Plaintiff always submitted the documents *requested by Defendants*, that the denial for failure to submit documents was therefore in error, and that Defendants, in effect, admitted that error by subsequently advising her in writing that her application was complete. Defendants' argument is premised on facts and inferences not pled in the FAC and therefore must be rejected. In short, Plaintiff has adequately pled a violation of the HBOR.

**B. Plaintiff has not Stated a Claim for Breach of Contract**

Plaintiff's second cause of action, against Aurora only, is for breach of the January 2011 Forbearance Agreement. (Dkt. No. 14 ¶¶ 34-39.) Plaintiff insists the Agreement gave her "the right to cure the arrearage through reinstatement, modification, or other foreclosure alternative options." (*Id.* ¶ 35; *see* Dkt. No. 18 at 7.) She alleges that after signing the January 2011 Agreement, the parties entered a subsequent agreement: specifically, "in July 2011, Plaintiff and Defendant entered into a foreclosure avoidance option whereby Defendant agreed to continue to review Plaintiff's loan for a loan modification . . . Therefore, pursuant to the Agreement, because Plaintiff was still pursuing foreclosure avoidance options and had entered into a Cure Method, Defendant breached the Agreement by initiating foreclosure proceedings against Plaintiff in July 2012." (Dkt. No. 18 at 7-8 (citations omitted); *see also* Dkt. No. 14 ¶ 18 (alleging that Aurora "told Plaintiff to continue to submit payments pursuant to the Forbearance Agreement while Aurora continued to determine if Plaintiff was eligible for a permanent loan modification").)

The elements of a cause of action for breach of contract are: (1) the existence of a contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages. *First Comm. Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001). Defendants argue that the claim against Aurora must fail because the plain language of the forbearance agreements belies her claim; in particular, the forbearance agreements and Deed of Trust specified that Aurora was not waiving the right to proceed with foreclosure.

A borrower can state a claim for breach of contract based on forbearance agreements where the agreement includes a contractual obligation for the lender to provide a loan modification. In *Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878, 880 (9th Cir. 2013), the court held that a mortgage servicer may be contractually bound to offer a borrower a permanent

1  mortgage modification if the borrower satisfied the terms of a trial mortgage modification
2  program—a type of forbearance program.  But in *Corvello*, the agreement at issue stated that if the
3  borrower complies with payments during the trial period, "then the Lender *will provide* me with a
4  Loan Modification Agreement."  *Id.* at 881.  The Ninth Circuit premised its decision on this clear
5  language guaranteeing a loan modification if the borrower complied.  *See id.*

6        Notwithstanding the particular agreement at issue in *Corvello*, "[i]n the context of
7  mortgage foreclosures, courts applying California law have generally been reluctant to permit
8  borrowers to assert claims arising out of forbearance agreements[.]"  *Reyes v. Wells Fargo Bank,*
9  *N.A.*, No. C-10-01667 JCS, 2011 WL 30759, at *13 (N.D. Cal. Jan. 3, 2011) (collecting cases);
10 *see, e.g.*, *Mehta v. Wells Fargo Bank, N.A.*, No. 10-CV-944 JLS (AJB), 2010 WL 3385020, at *8
11 (S.D. Cal. Aug. 26, 2010) (holding that plaintiff could not state a claim for breach of contract
12 based on forbearance agreement); *Smith v. Nat'l City Bank*, No. C 09-5715 SI, 2010 WL 1729392,
13 at *2 (N.D. Cal. Apr. 27, 2010) (same); *Morgan v. Aurora Loan Servs., LLC*, No. CV 12-4350-
14 CAS (MRWx), 2014 WL 47939, at *3 (C.D. Cal. Jan. 6, 2014) (same).

15       *Smith* is instructive.  In that case, the defendant-bank and plaintiff-borrower entered into a
16 written forbearance agreement to postpone foreclosure proceedings during the term of the
17 agreement if the plaintiff made three payments of $1,283.21.  2010 WL 1729392, at *1.  The
18 agreement provided, in relevant part, that the bank would not foreclose while the plaintiff made
19 certain payments, but that it was the plaintiff's "sole responsibility to contact Lender prior to the
20 expiration of this Agreement . . . to determine the current status of the loan and the potential
21 necessity for further loss mitigation efforts, such as an extension of the repayment period or other
22 options made available by Lender."  *Id.*  The plaintiff made the payments as the forbearance
23 agreement required, but after the last payment had been made, the bank informed him that it was
24 not willing to modify the loan, and foreclosure proceedings began anew.  *Id.* at *2.  The plaintiff
25 sued the bank for, among other things, breach of contract, alleging that the lender breached the
26 forbearance agreement by failing to modify the loan even though the plaintiff had successfully
27 completed payments pursuant to the agreement.  *Id.*  The court held that the plaintiff failed to state
28 a claim for breach of contract because "nothing in the Forbearance Agreement require[d]

United States District Court
Northern District of California

defendant to modify the loan, and nothing in the agreement prohibits defendant from foreclosing on the property after the expiration of the agreement." *Id.* at *3.

Plaintiff hangs her hat on a pre-*Corvello* case: *Pinel v. Aurora Loan Services, LLC*, 814 F. Supp. 2d 930 (N.D. Cal. 2011), in which the court came out the other way, denying Aurora's motion to dismiss causes of action—including a breach of contract claim—based on its use of the very forbearance agreements at issue here. *Id.* at 944. In *Pinel*, the plaintiff-borrower defaulted on her loan and entered a forbearance agreement with Aurora that also included the provisions at issue here in Attachment A. *Id.* at 935. The plaintiff timely made all of her payments under the plan, but Aurora denied Plaintiff's pending request for a loan modification, then continued to accept additional payments from the plaintiff, even after the plaintiff's property had been sold to Aurora at a trustee's sale. *Id.* The court found that the breach of contract claim could not be dismissed because the forbearance agreement itself was ambiguous: on the one hand, it purported to allow the borrower to pay back all arrearage, but on the other, it explicitly noted that the payment plan would be insufficient to pay that arrearage. *Id.* at 943.

But in *Corvello*'s wake—and especially given the Ninth Circuit's instruction that only a very clear promise to provide a loan modification in a forbearance agreement will give rise to breach of contract—other cases interpreting these same Aurora agreements have disagreed with *Pinel*. For example, in *Morgan*, the plaintiff-borrower alleged that Aurora had breached its contract by failing to provide a permanent loan modification after the plaintiff complied with the payment plan set forth in a forbearance agreement with the same provisions as in *Pinel* and the case at bar. 2014 WL 47939, at *3. Based on the agreement's language that "upon the Expiration Date, Customer must cure the Arrearage through a cure method, which may, but did not necessarily include a permanent loan modification[,]" the court "conclude[d] that the [forbearance agreement] unambiguously disclaim[ed] any guarantee of a permanent mortgage modification" and dismissed the plaintiff's breach of contract claim. *Id.*

In addition, as Plaintiff now asserts, the plaintiff in *Morgan* further alleged that Aurora breached a separate oral promise to permanently modify the plaintiff's loan after extending the forbearance agreement. *Id.* at *4. Although noting that a homeowner can state a claim for breach

12

of an oral promise to offer a permanent modification, *id.* (citing *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 58 (2013)), the court held that an allegation of such an oral agreement is barred by the parol evidence rule where, as with Aurora's forbearance agreements, the parties' written agreement contains an integration clause. *Id.*

The facts of this case mirror those in *Morgan* and compel the same result. Unlike the forbearance agreement at issue in *Corvello*, the forbearance agreement here does not include clear language expressing Aurora's promise, guarantee, or obligation to provide Plaintiff with a permanent loan modification: rather than stating that "the Lender *will provide* [the borrower] with a Loan Modification Agreement[,]" *Corvello*, 728 F.3d at 881, the agreement here merely notifies the lender that it is her obligation to cure any remaining defect at the close of the forbearance period based on any cure method the lender "may offer." (Dkt. No. 14 at Exs. A & B §§ b.) Thus, because Aurora never promised Plaintiff a loan modification as a provision of the forbearance agreement, its failure to provide one does not constitute a breach. *See Morgan*, 2014 WL 47939, at \*3; *cf. Corvello*, 814 F.2d at 881.

Plaintiff's claim that Aurora breached a later agreement to extend the written forbearance contract and provide a loan modification is not actionable either. In the FAC, Plaintiff alleges only that "Aurora, once more, *told* Plaintiff to continue to submit payments pursuant to the Forbearance Agreement while Aurora continued to determine if Plaintiff was eligible for a permanent loan modification." (*Id.* ¶ 18 (emphasis added).) First, as written, these allegations establish neither a promise to grant Plaintiff a permanent loan modification nor an agreement not to "commence or resume the foreclosure process until after Plaintiff did not qualify for a loan modification." (*Id.* ¶ 37.) But even if the FAC did allege facts sufficient to plausibly establish that Aurora told Plaintiff that it would extend the forbearance agreement in order to review her for a loan modification, and until it reached such a decision, her breach of contract claim would still be a non-starter. That is, to the extent that Plaintiff is asserting that this "extension agreement" was actually one to lengthen the duration of the parties' written contract, the FAC does not allege that it was in writing. (*See id.* ¶¶ 18, 37-38.) But the forbearance agreements in this case contained an integration clause, noting that any amendment thereto must be in writing. (Dkt. No.

14 at Exs. A & B §§ 14.) Accordingly, an agreement to extend the duration of that forbearance agreement that is not in writing is not actionable. *See Morgan*, 2014 WL 47939, at *4.

Defendant contends that even if Plaintiff can identify an actionable agreement, her claim will still fail because the FAC does not sufficiently allege damages because under the terms of the contract she owed the amount in default to Defendant. To be sure, Plaintiff has alleged that she was harmed because she "ma[de] payments under the contract" and is therefore entitled to damages. (*Id.* ¶ 39.) But a closer reading of the claim makes clear that Plaintiff's damages request does not include any such payments; rather, Plaintiff has specifically pleaded damages apart from any payments made pursuant to the forbearance agreements: she seeks "increased late fees and arrears, attorneys' fees, overcharge of fees, destruction of credit, [and] loss of the Property[.]" (*Id.*) These damages allegations are independent of Plaintiff's obligation to meet her mortgage payments. *See Johnson*, 2015 WL 351210, at *7 (finding that allegations that damages including "imminent loss of her Property, loss of money including but not limited to losses through overcharges, incurred attorneys' fees and costs to save her home, the accumulation of excessive arrears which could have been avoided through other foreclosure prevention alternatives, a loss of reputation and goodwill, [and] destruction of credit" sufficient allegations of damages); *Peterson v. Wells Fargo Bank, N.A.*, No. 13-03392, 2014 WL 3418870, at *5 (N.D. Cal. July 11, 2014) (finding in accordance with other courts that unwarranted late fees and attorney's fees were sufficient allegations of damages); *Izsak v. Wells Fargo Bank, N.A.*, No. C 13-05362, 2014 WL 1478711, at *4 (N.D. Cal. Apr. 14, 2014) (holding that the plaintiff's allegations that he had been charged with unwarranted late fees, attorneys' fees, and that his credit has been damaged were sufficient to allege damages based on fraud). Although Defendant argues that the credit report damages would have occurred absent the misrepresentations alleged because it was Plaintiff's underlying default that caused the foreclosure, the FAC alleges that Plaintiff would have taken other steps to prevent foreclosure if she had been advised of the impending sale. (Dkt. No. 14 ¶ 43.) Thus, Plaintiff adequately alleges at this stage of the litigation that the credit report damages were the result of Defendant's conduct, not her own.

The Court will therefore dismiss Plaintiff's breach of contract claim against Aurora for

failure to state a claim.  However, this dismissal is without prejudice; Plaintiff will have leave to amend the Complaint to cure the deficiencies described above.

### C. **Plaintiff's Claims for Misrepresentation**

Plaintiff's final two causes of action allege misrepresentation—both intentional and negligent—against Nationstar. (Dkt. No. 14 ¶¶ 40-57.)  The gravamen of Plaintiff's misrepresentation claims is that Nationstar representative Edward Babino either fraudulently or negligently misrepresented to her on the telephone on March 5 and March 13, 2013 that there was no scheduled sale date for Plaintiff's property because she had submitted a complete loan modification application and that, in reliance on that misrepresentation, Plaintiff did not pursue other foreclosure prevention measures, such as deed-in-lieu, refinancing options, a conventional sale, or reinstatement of the loan. (*Id.* ¶ 43.)

To state a claim for fraudulent misrepresentation, the plaintiff must allege: (1) a misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 49 Cal.Rptr.2d 377 (1996). Rule 9(b) requires that these facts be alleged with particularity. *In re Glen Fed. Sec. Litig.*, 42 F.3d 1541, 1547-49 (9th Cir. 1994). "Negligent misrepresentation is [also] a fraud-based claim and also requires pleading with particularity." *Samson v. One West Bank*, No. C 10-4827 PJH, 2011 WL 3269397, at *3 (N.D. Cal. July 28, 2011) (citation omitted). "The elements of a negligent misrepresentation claim are the same as those for a claim of fraudulent misrepresentation, except that there is no requirement of an intent to induce reliance. The misrepresentation must concern a past or existing fact." *Id.* (citation omitted).

Rule 9(b) states: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9.  Thus, the Ninth Circuit has held that, "while a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).  In other words, "[a]verments of fraud must be

accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). "The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991).

Here, Plaintiff has sufficiently pled the circumstances of the fraud for the purposes of Rule 9(b): Mr. Babino, a Nationstar representative, (the who) told Plaintiff that there was no sale date for the Property (the what) over the phone (the how) on March 6 and 13 (the when). (Dkt. No. 14 ¶ 43.) This representation was material because it directly impacted Plaintiff's decision *not* to take other measures to prevent foreclosure. Relatedly, Plaintiff has adequately alleged reliance because she alleges that did not pursue other foreclosure alternatives because she believed Nationstar was considering her application for a loan modification. (*Id.*) Similarly, the FAC also sufficiently alleges knowledge and intent: Plaintiff alleges that Mr. Babino made the statements "knowingly and in order to induce Plaintiff to continue submitting loan modification application materials rather than reinstate the loan or pursue other foreclosure alternatives" and that he "knew that Plaintiff had a sale date of March 13, 2013, but intentionally did not tell Plaintiff about [it] so that Nationstar could take Plaintiff's property at the sale and reap the benefits of the equity contained in the property." (*Id.* ¶ 45.) Based on these allegations, Defendant's argument that Plaintiff has failed to plead intent to deceive, and instead has merely pleaded "mistake with regard to the sale date status," is unavailing. (*See* Dkt. No. 1 at 15.)

For both causes of action, Nationstar also Defendants argues that Plaintiff's claims sound in promissory fraud based on the allegation that Nationstar misrepresented that they would review her for a loan modification and would not sell her home, and that the FAC does not sufficiently allege such a claim. (Dkt. No. 16 at 15.) Promissory fraud "is a subspecies of fraud which permits a plaintiff to state a cause of action in tort when a defendant fraudulently induces him to enter into a contract." *Richardson v. Reliance Nat'l Indem. Co.*, No. C-9-2952-CRB, 2000 WL 284211, at *4 (N.D. Cal. Mar. 9, 2000). In short, "[w]hile mere failure to perform on a contract

1     does not constitute fraud, a promise made *without the intention to perform* can be actionable

2     fraud." *Id.* (emphasis in original).  To be sure, if the gravamen of Plaintiff's misrepresentation

3     claim was that Nationstar entered into a contract with Plaintiff in which it promised to review her

4     for a loan modification but never intended to do so, promissory fraud would be in play.  But such

5     is not the case here, where Plaintiff's misrepresentation claims turn on Mr. Babino's particular

6     statement that there was no sale date for the Property—statements that were made long after any

7     agreement, and that cannot be read to have fraudulently induced Plaintiff to enter any contract.  *Cf.*

8     *Richardson*, 2000 WL 284211, at *4.

9           Finally, Defendant argues that Plaintiff has not adequately alleged damages because the

10    amount in default is owed to Defendant under the terms of the contract.   But—as with her breach

11    of contract claim against Aurora—in her misrepresentation claims Plaintiff has specifically

12    pleaded damages apart from any payments made pursuant to the forbearance agreements:  she lost

13    the opportunity to take other steps to save her home, which damaged her credit, caused emotional

14    distress, and caused her to lose equity she had in the home. (Dkt. No. 14 ¶ 44.)  Once again, these

15    allegations of damages are independent of Plaintiff's obligation to meet her mortgage payments.

16    *See Johnson*, 2015 WL 351210, at *7; *Peterson*, 2014 WL 3418870, at *5; *Izsak*, 2014 WL

17    1478711, at *4.  Here, too, although Defendant argues that the credit report damages would have

18    occurred absent the misrepresentations alleged because it was Plaintiff's underlying default that

19    caused the foreclosure, the FAC alleges that Plaintiff would have taken other steps to prevent

20    foreclosure if she had been advised of the impending sale.  (Dkt. No. 14 ¶ 43.)  Thus, Plaintiff

21    adequately alleges at this stage of the litigation that the credit report damages were the result of

22    Defendant's conduct, not her own.  Accordingly, Plaintiff has stated a claim for misrepresentation

23    and Defendant's motion to dismiss the third and fourth causes of action is denied.

## CONCLUSION

25        For the reasons set forth above, Defendant's Motion to Dismiss (Dkt. No. 16) is

26    GRANTED in part and DENIED in part.  The motion is GRANTED as to Plaintiff's breach of

27    contract claim against Aurora with leave to amend.  The motion is DENIED as to Plaintiff's

28    remaining claims arising under the Homeowner's Bill of Rights or common law

misrepresentation.

Plaintiff shall file an amended complaint within 14 days. Failure to file an amended complaint may result in dismissal of the breach of contract claim with prejudice.

The hearing previously set for March 26, 2015 is VACATED.

This Order disposes of Docket Nos. 16 and 17.

**IT IS SO ORDERED.**

Dated: March 23, 2015

_____
Jacqueline Scott Corley
United States Magistrate Judge