UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELITA JOHNSON,<br>　　　　Plaintiff,<br>　　v.<br>AURORA BANK, F.S.B., et al.,<br>　　　　Defendants. | Case No. 14-cv-05424-JSC<br><br>**ORDER RE: AURORA BANK, FSB'S MOTION TO DISMISS**<br>Re: Dkt. No. 31 |

Plaintiff Angelita Johnson ("Plaintiff") brings this action seeking damages stemming from the foreclosure of her home. She sues Defendants Aurora Bank, F.S.B. ("Aurora") and Nationstar Mortgage, LLC ("Nationstar," and together "Defendants") for violation of California's Homeowner's Bill of Rights, breach of contract, and misrepresentation. Plaintiff contends that after she defaulted on her loan, Aurora induced Plaintiff to enter two forbearance agreements under the pretense that if she made payments the bank would consider her for a permanent loan modification; Plaintiff now contends that Aurora never intended to consider her for a modification at all, but rather solely sought to obtain as much money as possible before foreclosing on her home. Plaintiff also contends that Nationstar improperly foreclosed on her property while she was in active loan modification review despite a Nationstar representative having told Plaintiff that her application was still under review and no sale would take place. The Court granted in part Defendants' joint motion to dismiss the First Amended Complaint ("FAC"), concluding that Plaintiff failed to state a claim for breach of contract against Aurora, but that the claims against Nationstar were sufficiently pleaded. *Johnson v. Aurora Bank, F.S.B.*, No. 14-cv-05424-JSC, 2015 WL 1306466, at *10 (N.D. Cal. Mar. 23, 2015). Plaintiff has since filed a Second Amended Complaint ("SAC"). (Dkt. No. 25.) Nationstar answered the SAC, but Aurora has moved to

1  dismiss the breach of contract claim, contending that the newly added allegations fail to cure the
2  defects identified in the Court's Order dismissing that count from the FAC.  (Dkt. No. 31.)  The
3  Court finds this matter suitable for disposition without oral argument.  *See* N.D. Cal. Civ. L.R. 7-
4  1(b).  Accordingly, the hearing set for May 28, 2015 is VACATED.  Having considered the
5  parties' arguments and the relevant legal authority, and for the reasons set forth in this Order, the
6  Court GRANTS Aurora's motion to dismiss the breach of contract claim.

### FACTUAL & PROCEDURAL BACKGROUND

The factual background of this case was detailed in the Court's Order granting in part Defendants' joint motion to dismiss the FAC, which the Court incorporates in full.  2015 WL 1306466, at *2-3.  The following facts are taken from the allegations of the FAC, the Court's Order, the SAC, and judicially noticeable documents.[1]  This action pertains to Defendant loan-servicers' conduct with respect to Plaintiff's mortgage on property located at 1785-1787 Franklin Street, Berkeley, California 94702 (the "Property").  In the SAC, Plaintiff brings three counts against Nationstar (violation of the California Homeowner's Bill of Rights, fraudulent misrepresentation, and negligent misrepresentation), and one count against Aurora, for breach of contract.  The Court will not reiterate the entire factual background here, but instead will limit its discussion to the facts relevant to the breach of contract claim against Aurora in the FAC and SAC.

---

[1] Pursuant to Federal Rule of Evidence 201, the Court "may judicially notice a fact that is not subject to reasonable dispute because it: (i) is generally known within the trial court's territorial jurisdiction; or (ii) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Judicial notice is appropriate for "materials incorporated into the complaint or matters of public record."  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  Courts in this District regularly taken judicial notice of publicly recorded documents related to real property, including deeds of trust, assignments and substitutions thereto, trustee's deeds upon sale, rescissions of notices of default, and elections to sell under a deed of trust.  *See, e.g.*, *Valasquez v. Mortg. Elec. Registration Sys., Inc.*, No. C 08-3818 PJH, 2008 WL 4938162, at *2-3 (N.D. Cal. Nov. 17, 2008); *Hotel Emps. & Rest. Emps. Local 2 v. Vista Inn Mgmt. Co.*, 393 F. Supp. 2d 972, 977-78 (N.D. Cal. 2005); *W. Fed. Sav. & Loan Ass'n v. Heflin*, 797 F. Supp. 790, 792 (N.D. Cal. 1992).  Here, Aurora requests that the Court take judicial notice of Exhibits 1-13, which are such publicly recorded documents relating to the Property at issue in this case.  The Court therefore GRANTS Aurora's request for judicial notice of these documents.  In addition, Aurora asks the Court to take judicial notice of Exhibit 14, which is the Court's March 23 Order granting Aurora's motion to dismiss the breach of contract claim with leave to amend.  (*See* Dkt. No. 32 ¶ 14.)  The Court need not take judicial notice of its own docket.

In the FAC, Plaintiff alleged that after inducing her to sign two written forbearance agreements, Aurora breached a later agreement to extend the latest written forbearance contract and promise to provide a loan modification by recording a Notice of Default and commencing with foreclosure proceedings, which Defendant Nationstar later pursued, resulting in the foreclosure of the Property. *Id.* at *2. The theories have changed in the FAC, but still arise out of Aurora's conduct related to the forbearance agreements. The agreements provide:

> Because payment of the Plan payments will not cure the Arrearage, Customer's account will remain delinquent. Upon the Expiration Date [of this agreement], Customer must cure the Arrearage through a full reinstatement, payment in full, loan modification agreement, or other loan workout option that Lender may offer (individually and collectively, a "Cure Method.")[.] Customer's failure to enter into a Cure Method will result in the loan being disqualified from any future Lender Loss Mitigation program with respect to the loan evidenced by the Note, and regular collection activity will continue, including, but not limited to, commencement or resumption of the foreclosure process[.]

(Dkt. No. 25 at Ex. A § b, Ex. B § b.)

In addition, the agreements contain two other provisions relevant to the breach of contract claim. First, the agreements both provide a "no waiver" provision, which states that

> Nothing contained herein shall constitute a waiver of any [or] all of the Lender's rights or remedies, including the right to commence or resume foreclosure proceedings. Failure by Lender to exercise any right or remedy under this Agreement or as otherwise provided by applicable law shall not be deemed a waiver thereof.

(*Id.* at Ex. A § 7, Ex. B § 7.) The agreements also include a provision titled "Entire Agreement," which notes that the forbearance agreements "may not be amended, waived, discharged or terminated orally but only by an instrument in writing." (*Id.* at Ex. A § 14, Ex. B § 14.) Finally, Plaintiff's Deed of Trust itself explicitly provides that forbearance does not constitute a waiver of the lender's right to foreclose. (*See* Dkt. No. 17-1 at 9.)

In its earlier Order, the Court concluded that Plaintiff could not state a claim for breach of contract for breach of these written forbearance agreements themselves, as the language described above "does not include clear language expressing Aurora's promise, guarantee, or obligation to provide Plaintiff with a permanent loan modification." 2015 WL 1306466, at *8. That is, "rather than stating that 'the Lender *will provide* [the borrower] with a Loan Modification Agreement'" as

3

in *Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878, 880 (9th Cir. 2013), "the agreement here merely notifies the lender that it is her obligation to cure any remaining defect at the close of the forbearance period based on any cure method the lender 'may offer.'" *Johnson*, 2015 WL 1306466, at *8 (citing the written forbearance agreements). Thus, the Court dismissed the breach of contract claim finding that such a claim failed as a matter of law given the agreements' language. *See id.*

As for Plaintiff's claim that Aurora breached some later agreement to extend the written forbearance contracts by commencing foreclosure proceedings and filing a Notice of Trustee's Sale in July 2012, when Plaintiff was still being reviewed for a contractual loan modification, the Court held that Plaintiff's FAC as written failed to allege breach of some later agreement, but such a claim might be actionable. Specifically, the Court noted that Plaintiff's mere allegations that "Aurora, once more, *told* Plaintiff to continue to submit payments pursuant to the Forbearance Agreement while Aurora continued to determine if Plaintiff was eligible for a permanent loan modification . . . establish neither a promise to grant Plaintiff a permanent loan modification nor an agreement" not to proceed with the foreclosure process until it determined her eligibility for a loan modification. 2015 WL 1306466, at *8. The Court also concluded that Plaintiff's allegations were insufficient because she did not allege that the "later agreement" was in writing, and the forbearance agreements' integration clauses require any amendments to be in writing, so "an agreement to extend the duration of that forbearance agreement that is not in writing is not actionable." *Id.* (citing *Morgan v. Aurora Loan Servs., LLC*, No. CV 12-4350-CAS (MRWx), 2014 WL 47939, at *3 (C.D. Cal. Jan. 6, 2014)). Finally, the Court noted that *if* Plaintiff had identified an actionable written agreement, then she could have stated a claim for breach of contract insofar as she sufficiently pleaded damages. *Id.* at *9.

Plaintiff has since filed the SAC, which significantly reframes the breach of contract claim against Aurora; instead of alleging a written agreement promising a loan modification consistent with the Court's Order, Plaintiff drops the "later agreement" claim altogether and now alleges three distinct breaches of the Deed of Trust and/or forbearance agreements. First, Plaintiff contends that Aurora breached Section 2 of the Deed of Trust by not applying Plaintiff's payments

4

in the manner set forth in Section 2 of that document—*i.e.*, first to interest and principal currently due—and instead applying her payments to other amounts. (Dkt. No. 25 ¶ 39 & Ex. C § 2.) Second, Plaintiff contends that Aurora breached Section 19 of the Deed of Trust, "which provides that Defendant is required to allow Plaintiff to reinstate her loan, upon acceleration." (*Id.* ¶ 40 & Ex. C § 19.) Finally, Plaintiff contends that Aurora "breached Section 4 of the [forbearance agreements], which provides that, upon completion of the agreements, Defendant was obligated to dismiss any pending foreclosure proceedings against." (*Id.* ¶ 41 & Exs. A & B § 4.) In Plaintiff's view, the Agreements required Defendant to rescind the Notice of Default upon Plaintiff's successful completion of the written forbearance agreements, but failed to do so. (*Id.* ¶ 41.)

Plaintiff alleges that she was harmed by these breaches because she made payments pursuant to these contracts without getting the promised benefits, and but for Aurora's breaches, she "would have, and could have, reinstated her loan." (*Id.* ¶ 42.) She seeks restitution, attorneys' fees, and actual damages including increased late fees and arrears, attorneys' fees, overcharge of fees, destruction of credit, and loss of the Property. (*Id.*)

Aurora moves to dismiss the breach of contract claim, contending that it still fails to state a claim upon which relief may be granted.[2] (Dkt. No. 31.)

### LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint where the action fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). Under Federal Rule of Civil Procedure 8(a)(2) a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the

---

[2] As the Court determined that Plaintiff sufficiently pleaded the three claims against Nationstar, it answered the SAC on April 23, 2015. (Dkt. No.30.)

1  defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550
2  U.S. at 554 (internal citations and quotations omitted).
3        For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in
4  the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving
5  party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).
6  However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a
7  plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels
8  and conclusions, and a formulaic recitation of the elements of a cause of action will not do."
9  *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). "Determining whether a
10 complaint states a plausible claim for relief . . . [is] a context-specific task that requires the
11 reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

## DISCUSSION

### A. Plaintiff Fails to State a Claim for Breach of Contract

The elements of a cause of action for breach of contract are: (1) the existence of a contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages. *First Comm. Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001). Defendants argue that the claim against Aurora still fails because Aurora's conduct does not constitute a breach of any of the provisions that Plaintiff identifies.

Plaintiff appears to have abandoned her claim that Aurora breached a "later agreement" to extend the written modification agreements, as she pleaded in the FAC. (*See* Dkt. No. 25 ¶¶ 34-42.) Even if she were still pursuing such a claim, it would fail for the same reasons set forth in the Court's earlier Order because Plaintiff has not alleged that there was any subsequent written agreement to extend the written forbearance agreements or provide a loan modification. *See Johnson*, 2015 WL 1306466, at *8. But none of Plaintiff's newly-crafted theories of breach state a claim for relief, either.

      1.    *Breach of Section 2 of the Deed of Trust*

First, Plaintiff contends that Aurora breached Section 2 of the Deed of Trust by applying Plaintiff's monthly payments "made pursuant to the [forbearance agreements] in a manner

inconsistent with the requirements under the Deed of Trust, and instead [ ] applied [them] to other amounts that [Aurora] claimed were due . . . instead of principal and interest." (Dkt. No. 25 ¶ 39.) This is the extent of the allegations in the SAC about Aurora's application of payments; it does not allege how Aurora applied the money, but merely alleges that it did not apply the payments to principal first then interest.

The plain language of the written forbearance agreements belies Plaintiff's claim. To be sure, Section 2 of the Deed of Trust requires the Lender to apply all payments "in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3 [pertaining to taxes and assessments, leasehold payments, and mortgage insurance]." (Dkt. No. 25 at Ex. C § 2.) But the forbearance agreements modified the parties' obligations under the Deed of Trust and other loan documents. (*See* Dkt. No. 25 at Exs. A & B § 9; *see also* Dkt. No. 25 at 20 (noting that the deed of trust is the "security instrument" referred to throughout).) One provision explicitly modified in the forbearance agreements is the "Application of Payments[,]" which specifically provides that:

> The payments received by Lender from Customer pursuant to this Agreement shall be applied, at Lender's sole option, first to the earliest monthly payment under the Note that is due. Any amounts received by the Lender that are less than the full payment . . . then due and owing under this Agreement shall be, at Lender's sole option, (1) returned to Customer, or (2) held by Lender in partial or suspense payment balance until sufficient sum is received by Lender to make a full payment. If this Agreement is canceled and/or terminated for any reason, any remaining funds in this partial or suspense payment balance shall be credited toward Customer's remaining obligation owing in connection with the loan and shall not be refunded.

(Dkt. No. 25 at Exs. A & B § 10.) The parties agreed that Aurora would apply the payments differently from what the Deed of Trust required; thus, the payment terms of the Deed of Trust were no longer in force, and therefore were no longer part of the agreement governing the parties' relationship. Aurora's alleged failure to comply with terms that no longer govern does not constitute a breach. Plaintiff has therefore failed to plead breach of contract based on Section 2 of the Deed of Trust. *See First Comm. Mortg. Co.*, 89 Cal. App. 4th at 745.

Plaintiff's argument to the contrary is unavailing. For the first time in her opposition,

Plaintiff raises yet another theory of breach of the payment terms.  Citing total arrears figures set forth in publicly-recorded documents attached to Aurora's request for judicial notice, Plaintiff asserts that "the $30,000.00 paid by Plaintiff over the course of the forbearance agreements were not applied to her loan at all" and that Aurora "[took] the money and simply [kept] it, without applying any of the money to Plaintiff's account[.]"  (Dkt. No. 33 at 8-9.)  But this is not what the SAC alleges: rather, the SAC merely alleges that Aurora did not apply the payments in the manner set forth in the Deed of Trust.  The Court declines to consider whether Plaintiff could state a claim if she had alleged that Aurora did not apply the payments to her account at all, as she argues in her opposition.  *See, e.g.*, *Lawther v. OneWest Bank, FSB*, No. C-10-00054 JCS, 2012 WL 298110, at *26 (N.D. Cal. Feb. 1, 2012) ("Because Plaintiff has had numerous opportunities to properly allege his claims, the Court will hold Plaintiff to the allegations [in the operative complaint] and will not consider claims [or allegations] presented for the first time in his [o]pposition.").

Thus, Plaintiff has failed to state a claim for breach of Section 2 of the Deed of Trust.

2.   *Breach of Section 19 of the Deed of Trust*

The same is true of Plaintiff's claim that Aurora breached Section 19 of the Deed of Trust.  This section pertains to the borrower's right to reinstate the loan after acceleration, and generally provides that a borrower may reinstate the terms of the agreement—thereby avoiding foreclosure—by paying all sums past due as if no acceleration had occurred, curing any default, and paying any of Lender's expenses associated with enforcing the agreement.  (Dkt. No. 25 at Ex. C § 19.)  In the SAC, Plaintiff alleges that Aurora accelerated Plaintiff's loan, therefore she had the right to reinstate the loan, but "Defendant interfered with Plaintiff's right to reinstate her loan, thus breaching the Deed of Trust, when it induced Plaintiff to enter into various agreements instead of reinstating her loan, which she was ready willing and able to do."  (Dkt. No. 25 ¶ 40.)  The facts alleged in the SAC do not state a claim for breach of this provision.

First, Plaintiff's SAC makes no allegation that she attempted to reinstate her loan by paying all past due amounts plus Lender's expenses in the manner set forth in Section 19, let alone that she attempted to do so and Aurora interfered with that right or refused to allow her to pay the full amount or reinstate her loan.  What is more, there are no facts that give rise to a plausible

inference that Aurora tricked Plaintiff, interfered with her rights, or otherwise improperly induced her to enter into the forbearance agreements. To the contrary, in the SAC Plaintiff alleges that she was the one to "contact[ ] Aurora to determine what could be done to save her home" once she received the Notice of Trustee's Sale. (*Id.* ¶ 12.) It was only in response that Aurora sent Plaintiff the first of the written forbearance agreements. (*Id.*) Indeed, the agreements themselves reflect that "customer has *requested* Lender's forbearance[.]" (*Id.* at 21.)

Moreover, as described above, the forbearance agreements clearly and unequivocally stated that except as otherwise provided—*i.e.*, apart from the specific provisions of the forbearance agreements—the Deed of Trust remained in full force and effect, so there is no indication that Aurora sought to conceal or otherwise mislead Plaintiff into believing that the right to reinstatement was no longer an option. (*Id.* at Exs. A & B § 9.) In addition, other plain language of the forbearance agreements belies Plaintiff's allegation that Aurora "induced" Plaintiff to enter the forbearance agreements to interfere with her right to reinstatement. For example, the agreements specifically provide that "Customer may be entitled by law to cure [her] default by bringing the loan . . . current[.]" (*Id.* § 8.) In short, even drawing all inferences in Plaintiff's favor, the facts alleged in the SAC do not plausibly allege that Defendants sought to interfere with Plaintiff's right to reinstatement.

In her opposition, Plaintiff insists that she states a claim for breach of the right-to-reinstatement provision because the forbearance agreements were misleading and ambiguous inasmuch as they led her to believe that reinstatement was guaranteed. (Dkt. No. 33 at 8-9.) In support of this argument, Plaintiff relies on *Pinel v. Aurora Loan Services, LLC*, 814 F. Supp. 2d 930 (N.D. Cal. 2011). (Dkt. No. 33 at 9-10.) *Pinel* does not help Plaintiff. It did not involve breach of the plaintiff's right to reinstatement as set forth in a deed of trust; instead, it involved breach of a forbearance agreement itself—*i.e.*, the claim Plaintiff earlier alleged. *See Pinel*, 914 F. Supp. 2d at 935. As discussed in the Court's Order dismissing the breach of contract claim in Plaintiff's FAC, in *Pinel* the court found that the breach of contract claim could not be dismissed because the forbearance agreement itself was ambiguous: on the one hand, it purported to allow the borrower to pay back all arrearage, but on the other, it explicitly noted that the payment plan

9

would be insufficient to pay that arrearage. *Id.* at 943. The Court has already noted that in the wake of a more recent Ninth Circuit decision, other cases interpreting these same Aurora agreements have disagreed with *Pinel*, finding no ambiguity, determining that the forbearance agreements plainly did not promise a loan modification, and therefore dismissing the plaintiffs' breach of contract claims. *See Johnson*, 2015 WL 1306466, at *8 (citations omitted); *see also Morgan*, 2014 WL 47939, at *3 (concluding that the forbearance agreements were unambiguous). Plaintiff's reliance on *Pinel* the second time around is no more persuasive than last time: because the forbearance agreements did not guarantee a cure method, they did not guarantee reinstatement, either. (*See* Dkt. No. 25 at Ex. C § 19.) For each of these reasons, Plaintiff fails to state a claim for breach of Section 19 of the Deed of Trust.

3. *Breach of Section 4 of the Forbearance Agreements*

Lastly, Plaintiff alleges that Aurora breached Section 4 of the written forbearance agreements. This provision states that "Lender shall be under no obligation to dismiss a pending foreclosure proceeding until such time as all terms and conditions of this Agreement and Attachment A have been fully performed." (Dkt. No. 25 ¶ 41; *id.* at Exs. A & B § 4.) Plaintiff reads this provision to mean that Aurora was obligated to dismiss the pending foreclosure proceeding against her—by rescinding the Notice of Default—once Plaintiff completed the monthly payments pursuant to each agreement, and by failing to do so, breached the forbearance agreements. (*Id.* ¶ 41.) This claim meets the same fate as the others.

Plaintiff's argument ignores certain provisions of the forbearance agreements. Section 4 hinges dismissal of foreclosure proceedings on completion of two different things: (1) the agreement—*i.e.*, the monthly payments that Plaintiff alleges she made in full; and (2) Attachment A. (*Id.* at Exs. A & B § 4.) But Plaintiff does not allege that she fully performed Attachment A, which provides in relevant part that "Customer's failure to enter into a Cure Method will result in . . . regular collection activity [ ] continu[ing], including, but not limited to, commencement or resumption of the foreclosure process[.]" Plaintiff nowhere alleges that she entered into a Cure Method. Because this condition precedent to dismissal of pending foreclosure proceedings—*i.e.*, full performance of Attachment A's entry into a Cure Method—is not alleged to have occurred,

10

the SAC does not plausibly allege that Aurora was under any obligation to rescind the Notice of Default even though Plaintiff had completed her monthly payments consistent with the agreements. Thus, Aurora's conduct as alleged in the SAC does not give rise to a plausible inference that it breached Section 4 of the forbearance agreements.

**B.     Leave to Amend**

Generally, when a complaint is dismissed, "leave to amend shall be freely given when justice so requires." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010); *see* Fed. R. Civ. P. 15(a). The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted). However, leave to amend may be denied "where the amendment would be futile." *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009). Further amendment may be denied as futile where a plaintiff has already amended the complaint once. *See Semiconductor Energy Lab Co., Ltd. v. Yujurio Nagata*, No. C 11-02793 CRB, 2012 WL 177557, at *8 n.6 (N.D. Cal. Jan. 23, 2012) (citing *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)).

Here, Plaintiff has already amended her breach of contract claim twice. The Court concludes that further amendment would be futile as to her claims that Aurora breached the forbearance agreements; despite having the written agreements, she is unable to identify any provision which Aurora may have plausibly violated. Nor has she been able to articulate any plausible claim for breach of the Deed of Trust.

The Court will, however, grant Plaintiff leave to amend to allege a breach of contract claim arising from Aurora's alleged failure to apply Plaintiff's payments to her account at all. Plaintiff is cautioned, however, that such claim should only be made if Plaintiff can, in good faith and consistent with Federal Rule of Civil Procedure 11, make such allegations with sufficient detail as to how Aurora credited the payments and why such conduct is a breach of contract.

## CONCLUSION

For the reasons described above, the Court GRANTS Aurora's motion to dismiss the

1 breach of contract claim of the SAC.  This dismissal is with leave to amend only as set forth
2 above.  Any amended complaint shall be filed with 20 days of this Order.  If Plaintiff chooses not
3 to file an amended complaint, Aurora shall be dismissed with prejudice.
4      This Order disposes of Docket No. 31.
5      **IT IS SO ORDERED.**
6 Dated:  May 27, 2015

*(signature)*
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California

12