United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANGELITA JOHNSON,
Plaintiff,

v.

AURORA BANK, F.S.B., et al.,
Defendants.

Case No. 14-cv-05424-JSC

**ORDER RE: MOTION TO DISMISS THIRD AMENDED COMPLAINT**

Re: Dkt. No. 46

Plaintiff Angelita Johnson ("Plaintiff") brings this action seeking damages stemming from the foreclosure of her home. She sues Defendants Aurora Bank, F.S.B. ("Aurora") and Nationstar Mortgage, LLC ("Nationstar," and together "Defendants") for violation of California's Homeowner's Bill of Rights, breach of contract, and misrepresentation. Plaintiff contends that after she defaulted on her loan, Aurora induced Plaintiff to enter two forbearance agreements under the pretense that if she made payments the bank would consider her for a permanent loan modification; Plaintiff now contends that Aurora never intended to consider her for a modification at all, but rather solely sought to obtain as much money as possible before foreclosing on her home. Plaintiff also contends that Nationstar improperly foreclosed on her property despite having told Plaintiff that her application was still under review and no sale would take place.

The Court granted in part Defendants' joint motion to dismiss the First Amended Complaint ("FAC") and Aurora's motion to dismiss the Second Amended Complaint ("SAC"), concluding that Plaintiff failed to state a claim for breach of contract against Aurora, but that the claims against Nationstar were sufficiently pleaded. *See Johnson v. Aurora Bank, F.S.B.*, No. 14-cv-05424-JSC, 2015 WL 3409227, at *1-3 (N.D. Cal. May 27, 2015) ("*Johnson II*"); *Johnson v. Aurora Bank, F.S.B.*, No. 14-cv-05424-JSC, 2015 WL 1306466, at *10 (N.D. Cal. Mar. 23, 2015)

United States District Court
Northern District of California

("*Johnson I*"). Plaintiff has since filed a Third Amended Complaint ("TAC"). (Dkt. No. 25.) The Court allowed Nationstar to constructively answer the TAC, based on its earlier answer to the SAC. Aurora, however, has moved again to dismiss the breach of contract claim, contending that the newly added allegations still fail to cure the defects identified in the Court's Order dismissing that count from the SAC. Having considered the parties' arguments, the Court concludes that oral argument is not required, and GRANTS Aurora's motion to dismiss the breach of contract claim in the TAC without leave to amend.

**FACTUAL & PROCEDURAL BACKGROUND**

The factual background of this case has been detailed in the Court's Orders regarding dismissal of the FAC and SAC, which the Court incorporates in full. *See Johnson II*, 2015 WL 3409227, at *1-3; *Johnson I*, 2015 WL 1306466, at *2-3. The following facts—limited to those relevant to the breach of contract claim—are taken from the allegations of the FAC and SAC, the Court's Orders, the TAC, and judicially noticeable documents.[1] This action pertains to Defendant loan-servicers' conduct with respect to Plaintiff's mortgage on property located at 1785-1787 Franklin Street, Berkeley, California 94702 (the "Property"). In the TAC, Plaintiff brings three counts against Nationstar (violation of the California Homeowner's Bill of Rights, fraudulent misrepresentation, and negligent misrepresentation), and one count against Aurora, for breach of contract.

[1] Pursuant to Federal Rule of Evidence 201, the Court "may judicially notice a fact that is not subject to reasonable dispute because it: (i) is generally known within the trial court's territorial jurisdiction; or (ii) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Judicial notice is appropriate for "materials incorporated into the complaint or matters of public record." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Courts in this District regularly taken judicial notice of publicly recorded documents related to real property, including deeds of trust, assignments and substitutions thereto, trustee's deeds upon sale, rescissions of notices of default, and elections to sell under a deed of trust. *See, e.g., Valasquez v. Mortg. Elec. Registration Sys., Inc.*, No. C 08-3818 PJH, 2008 WL 4938162, at *2-3 (N.D. Cal. Nov. 17, 2008); *Hotel Emps. & Rest. Emps. Local 2 v. Vista Inn Mgmt. Co.*, 393 F. Supp. 2d 972, 977-78 (N.D. Cal. 2005); *W. Fed. Sav. & Loan Ass'n v. Heflin*, 797 F. Supp. 790, 792 (N.D. Cal. 1992). Here, Aurora requests that the Court take judicial notice of Exhibits 1-13, which are such publicly recorded documents relating to the Property at issue in this case. The Court therefore GRANTS Aurora's request for judicial notice of these documents. In addition, Aurora asks the Court to take judicial notice of Exhibits 14 and 15, which are the Court's March 23 and May 27 Orders granting Aurora's motion to dismiss the breach of contract claim with leave to amend. (*See* Dkt. No. 32 ¶¶ 14-15.) The Court need not take judicial notice of its own docket.

In the FAC, Plaintiff alleged that after inducing her to sign two written forbearance agreements, Aurora breached a later agreement to extend the latest written forbearance contract and promise to provide a loan modification by recording a Notice of Default and commencing with foreclosure proceedings, which Defendant Nationstar later pursued, resulting in the foreclosure of the Property. *Johnson I*, 2015 WL 1306466, at *3-4.

In the SAC, the theory of breach changed. There, Plaintiff alleged that Aurora breached three separate contractual provisions: (1) Section 2 of the Deed of Trust by applying her monthly payments to something other than principal and interest; (2) Section 19 of the Deed of Trust by interfering with Plaintiff's right to reinstate her loan although Plaintiff was ready, willing, and able to do so; and (3) Section 4 of the Forbearance Agreements by failing to rescind the Notice of Default once Plaintiff completed making monthly payments pursuant to that agreement. (*See generally* Dkt. No. 45 ¶¶ 41.) The Court concluded that Plaintiff could not state a claim for breach of any of these provisions. As for the alleged breach of Section 2, the Court held that Plaintiff could not state a claim for misapplied payments in violation of the Deed of Trust because that document no longer governed the parties' relationship; the Forbearance Agreements did. *Johnson II*, 2015 WL 3409227, at *4. Regarding breach of Section 19, the Court concluded that Plaintiff could not state a claim because the Forbearance Agreements clearly and unequivocally stated that Plaintiff had to comply by paying monthly payments *and* entering into a Cure Method before reinstatement would occur. *Id.* at *5. Lastly, as for breach of Section 4, the Court concluded that Plaintiff failed to state a claim because Aurora was under no obligation to rescind the Notice of Default until Plaintiff had entered a Cure Method, which she had not alleged. *Id.* at *6. The Court granted Plaintiff leave to amend solely with respect to "Aurora's alleged failure to apply Plaintiff's payment to her account[.]" *Johnson II*, 2015 WL 3409227, at *6. The Court further cautioned Plaintiff "that such claim should only be made if Plaintiff can, in good faith and consistent with Federal Rule of Civil Procedure 11, make such allegations with sufficient detail as to how Aurora credited the payments and why such conduct is a breach of contract." *Id.*

Plaintiff then filed the TAC, and her theory of breach of contract has shifted yet again. Plaintiff now contends that Aurora breached the Forbearance Agreements by failing to credit her

monthly payments altogether. Specifically, Plaintiff alleges that Aurora breached the Forbearance Agreements by not applying Plaintiff's payments in the manner set forth in Section 10 of that document—*i.e.*, by applying the monthly payments "first to the earliest monthly payment under the Note that is due." (Dkt. No. 41 ¶ 39 & Exs. A & B § 10.) Plaintiff further alleges that Aurora breached Section 10's provision that, "if a payment was not sufficient to cover a full payment, the Lender could either return the payment to the Customer or hold it in a suspense account" and, "if the Agreements are canceled or terminated, any remaining funds in the suspense account shall be credited towards Customer's remaining obligations under the loan." (*Id.* ¶ 29 & Ex. A & B § 10.) Plaintiff posits that her monthly payments from January 2010 through October 2010 "were not applied to her account during the term of the Agreements, were not returned to her, and were not applied to her account at the termination of the Agreements" as required. (*Id.* ¶ 39.)

In support of this theory of breach, Plaintiff alleges that as of March 2009, she had been making payments of approximately $2,200.00 per month. (*Id.* ¶ 11.) The December 2009 Forbearance Agreement indicated that Plaintiff owed $667,159.23 on the loan, comprised of unpaid principal, interests, costs and expenses, and advances of $10,000 per year in tax and insurance. (*Id.* ¶ 12.) The December 2009 Forbearance Agreement reported that Plaintiff was $21,903.90 in default on principal and interest, but her arrearage—including principal, interest payments, and other allowable fees and costs—totaled $26,023.36. (*Compare id.* ¶ 36, *with* Dkt. No. 42 at 4, 12.)[2] From January 2010 through December 2010, Plaintiff made her monthly payment of $1,169.00 pursuant to the agreement. (Dkt. No. 41 ¶¶ 12, 15.) These payments total $14,028. Aurora rejected her January 2011 payment. (*Id.* ¶ 15.) Aurora then sent Plaintiff the January 2011 Forbearance Agreement, indicating that Plaintiff's principal and interest payments had risen to $39,603.78 in default, and that, including advances, costs, and fees, Plaintiff's total arrearage has risen to $44,737.63. (*Id.* ¶ 17; Dkt. No. 42.) Pursuant to the January 2011 Forbearance Agreement, Plaintiff made an initial payment of $2,269.56 followed by monthly payments of $1,645.00 from March 2011 until October 2011. (Dkt. No. 41 ¶¶ 17-18.) Thus,

[2] Page numbers throughout refer to those that the Court's electronic filing system automatically assigns.



United States District Court
Northern District of California

Plaintiff paid a total of $13,784.56 on the January 2011 Forbearance Agreement. Aurora then stopped accepting Plaintiff's payments. (*Id.* ¶ 18.) The July 2012 Notice of Trustee's Sale indicated that Plaintiff now owed $771,924.15 on the loan. (*Id.* ¶ 20; *see also* Dkt. No. 47-1 at 65.) Thus, from the beginning of the December 2009 Forbearance Agreement until the recording of the Notice of Trustee's Sale in July 2012, Plaintiff's total arrearage grew by $104,764.92.

Plaintiff calculates that over this entire time period, from December 22, 2009 through July 3, 2012, assuming she should have made 31 monthly payments of $2,200.00 under the Deed of Trust (Dkt. No. 41 ¶ 35), and assuming $25,000.00 in "advances[,]"—based on an estimate of $10,000 per year—Plaintiff's "loan balance would have grown approximately $93,000.00 . . . if she had made no payments under the Forbearance Agreements." (*Id.* ¶¶ 10, 40.) Instead, Plaintiff reasons that she made approximately $30,000.00 in payments during this time period, so her loan balance should only have increased approximately $63,000.00 during the same time period, when Defendants reported an increase of $104,000.00. (*Id.*) The explanation of that increase is that "[Aurora] did not apply any of the $30,000 in payments to her loan . . . and did not return any of the monies to Plaintiff." (*Id.*)

Plaintiff contends that she was harmed by this breach because she made payments under the contract without getting the credit—*i.e.*, without her arrearage decreasing. (*Id.* ¶ 41.) She seeks restitution, attorneys' fees, and actual damages including increased late fees and arrears, attorneys' fees, overcharge of fees, destruction of credit, and loss of the Property. (*Id.*)

Aurora moves to dismiss the breach of contract claim, contending that it still fails to state a claim upon which relief may be granted.[3] (Dkt. No. 46.)

**DISCUSSION**

The elements of a cause of action for breach of contract are: (1) the existence of a contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages. *First Comm. Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001).

[3] As the Court determined that Plaintiff sufficiently pleaded the three claims against Nationstar, that party answered the SAC on April 23, 2015. (Dkt. No. 30.) The Court considers Nationstar to have constructively answered the TAC.

Aurora argues that its conduct does not constitute a breach of the provisions that Plaintiff identifies because (1) Plaintiff's mathematical calculations about the amount due are either incorrect or insufficiently documented; and (2) Plaintiff has failed to plead damages.

Plaintiff has pleaded sufficient facts to plausibly establish the first element: the existence of a contract—*i.e.*, the Forbearance Agreements. Turning to the other elements, Aurora most ardently challenges the third: Aurora's purported breach. The gravamen of Plaintiff's claim for breach is that Aurora failed to credit her monthly payments. To support this claim, Plaintiff relies entirely on estimated mathematical calculations describing the amount of arrearage owed before the Forbearance Agreements and how that arrearage grew—purportedly in a disproportionate manner—during the time period at issue. These calculations are based on Plaintiff's allegation that her prior payments under the Deed of Trust were approximately $2,200 per month, and her allegation that she accrued approximately $25,000 in advances. As a threshold matter, Aurora urges the Court to reject these allegations because the "number[s] [are] pulled out of thin air and there are no supporting facts or documentation given to explain it." (Dkt. No. 50 at 3.) However, it is not the plaintiff's burden to provide documentation to support factual allegations at the pleading stage; rather, unless a defendant produces judicially noticeable documents that clearly refute the factual allegations, the Court accepts them as true. Likewise, Aurora's argument that the numbers Plaintiff identifies are legal conclusions is without merit; an allegation about an amount the amount of money owed is a factual allegation.

Plaintiff's TAC specifically identifies how she reached her calculation and the particular amounts alleged to have been misapplied—or, more appropriately, not applied at all—as the Court directed her to do. While Aurora argues that Plaintiff's calculations focus exclusively on the increase in principal and interest due, ignoring the other costs that contribute to total arrearage, such is not the case; while certain allegations focus only on the amount of principal and interest due, taken as a whole, the TAC does include allegations about these other amounts.

Ultimately, however, the Court need not finally decide whether such allegations state a claim for breach because the TAC fails to allege facts sufficient to plausibly establish another element of a breach of contract claim: damages. The gravamen of Plaintiff's claim for damages is

that she paid $30,000 without "getting the benefits thereof"—*i.e.*, her payments did not lessen her liability on the loan, and she suffered actual damages including increased late fees and arrears, attorneys' fees, overcharge of fees, destruction of credit, and loss of the Property, as a result. (Dkt. No. 41 ¶ 41.) The problem for Plaintiff, however, is that even if she sufficiently alleged performance and breach, the damages are not of Aurora's making. Under the very terms of the Forbearance Agreements on which Plaintiff relies, she would not have cured her default even if Aurora *had* credited the payments properly because there are no allegations that she entered a Cure Method as the Agreements require. Her demand for restitution provides the clearest picture of how the damages she alleges miss the mark: even if Aurora had misapplied $30,000 in payments, Plaintiff still owes many times that amount; under such circumstances, it cannot be said that Aurora was unjustly enriched by misapplying, or not applying, the $30,000. Moreover, Plaintiff never sought to reinstate the loan by paying it off in full, which would have cured her default under the Forbearance Agreement. Thus, accepting the facts alleged in the TAC as true, even if Aurora improperly credited the $30,000, Plaintiff would still owe significant arrears on her loan and would still be in default, requiring the attorneys' fees and costs incurred to fight the foreclosure that followed. Thus, Plaintiff has not adequately alleged damages. To put it another way, unless Aurora prevented Plaintiff from curing her default because of the miscalculation, or eventually collects more from Plaintiff than is actually owed, Plaintiff has not been harmed. The TAC therefore fails to state a claim for breach of contract against Aurora.

## CONCLUSION

For the reasons explained above, the Court GRANTS Aurora's motion to dismiss the breach of contract claim in the TAC. This dismissal is with prejudice. Plaintiff has already amended her breach of contract claim against Aurora three times. Each time, the theory of breach has changed. In light of the multiple unsuccessful opportunities to amend, the Court concludes that further amendment would be futile and declines to grant leave to amend. Aurora is therefore dismissed from this action.

This Order disposes of Docket No. 46.

**IT IS SO ORDERED.**

Dated: August 3, 2015

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California